UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DIANA CASTILLO,

        Plaintiff,

      v.

MICHAEL ASTRUE,
Commissioner of Social Security
Administration,

        Defendant.

Case No. 1:11-CV-65 JVB

**OPINION AND ORDER**

      Plaintiff Diana Castillo seeks judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security, who denied her application for Supplemental Security Income and Disability Insurance Benefits under the Social Security Act. For the following reasons, the Court affirms the Commissioner's decision.

**A. Procedural Background**

      On March 6, 2009, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") alleging disability beginning December 31, 1995. (R. 147–154.) Plaintiff amended the alleged disability date to November 24, 2008, during the administrative hearing. (R. 31.) Plaintiff's claim was denied on April 28, 2009, and upon reconsideration on September 8, 2009. (R. 47–55.) In October 2009, Plaintiff filed a written request for a hearing before Administrative Judge Yvonne K. Stam ("ALJ".) (R. 61–67.)

On October 4, 2010, the ALJ determined Plaintiff was not disabled and was thus not entitled to SSI and DIB benefits. (R. 11–17.) The ALJ found as follows:

1. The claimant has not engaged in substantial gainful activity since December 31, 1995, the alleged onset date.
2. The claimant has the following severe impairment: herniated lumbar disc.
3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
4. The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), but she must have the ability to alternate between sitting and standing as needed with no more than the occasional bending and stooping.
5. The claimant is unable to perform any past relevant work.
6. The claimant was born on November 21, 1970, and was 25 years old on the alleged disability date, which is defined in the Social Security Act as a younger individual (Age 18–44.)
7. The claimant has at least a high school education and is able to communicate in English.
8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.
9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
10. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 1995, through the date of this decision.

(R. 16–22.)

The ALJ's opinion became final when the Appeals Council denied Plaintiff's request for review on March 9, 2011. (R. 1.)

**B. Factual Record**

**(1)** *Plaintiff's Background*

Plaintiff was born on November 21, 1970. (R. 141.) Plaintiff completed high school and is able to communicate, read, and write in English. (R. 43.) Plaintiff has a limited work history, but has worked part-time as a housekeeper, office assistant, painter's helper, and in a packaging factory. (R. 173.)

Plaintiff currently lives in her mother's home with her husband and four children. (R. 148.) Plaintiff testified that she is able to sit or stand for up to an hour but cannot lift anything heavier than ten pounds. (R. 33–34.) Plaintiff further testified that she is able to wash dishes at the sink but is unable to drive or undertake any substantial physical exertion. (R. 36–38.)

**(2)** *Medical Evidence*

On November 26, 2008, Plaintiff went to the emergency room complaining of chronic right-side back pain. (R. 224.) Plaintiff had been standing for about two hours before the onset of the pain. *Id*. During this hospital visit Plaintiff also complained of intermittent numbness in her right leg and foot. *Id*.

On December 11, 2008, Plaintiff underwent a lumbar spine magnetic resonance imaging ("MRI"). (R. 217.) This MRI revealed a marked loss of disc space height at L5-S1 and that the protruding and extruded disc material abuts and impinges upon the traversing right S1 nerve root. (*Id.*) On January 29, 2009, Plaintiff returned to the emergency room complaining of continued back pain and numbness radiating down her right leg from the buttocks region. (R. 221.)

On April 23, 2009, Plaintiff saw Dr. Williams, an orthopedic surgeon, for her recurring low back pain with right lower extlegremity radicular pain. (R. 274.) Dr. Williams observed that Plaintiff walked with a normal to slightly limping gait, had a positive straight leg raise on the right provoking pain into the right posterior thigh and gastrocnemius. (*Id.*) Additionally, Dr. Williams found Plaintiff's leg strength to be 5/5 but there was decreased sensation diffusely of the right lower leg as compared to the left. (*Id.*) Dr. Williams recommended conservative

treatment consisting of an epidural steroid injection and a monitored physical therapy program. (R. 274–275.)

On April 27, 2009, Dr. Corcoran, an Indiana state agency physician, completed a Physical Residual Functional Capacity Assessment for Ms. Castillo. (R. at 264-271.) Dr. Corcoran determined that Plaintiff can perform the full-range of medium work and sit, stand or walk about 6 hours in an 8-hour workday. (R. 265–271.) Dr. Corcoran's decision and findings were later affirmed by another state agency physician (R. 272)

On August 18, 2009, Plaintiff returned to Dr. Williams's office because of persistent right leg pain. (R. 277.) Dr. Williams reported Plaintiff's straight leg raise was markedly positive and she had a positive cross straight leg raise. (*Id.*) Dr. Williams advised Plaintiff that she was a candidate for a lumbar discectomy, involving a right L5-S1 laminotomy, foraminotomy, and discectomy. (*Id.*) On November 19, 2009, Plaintiff underwent the procedures recommended by Dr. Williams. (R. 344.)

From December 2009 through January 2010, Plaintiff attended numerous postoperative follow-up appointments. (R. 324, 327.) During these appointments, Plaintiff reported continued right lower leg radicular pain and difficulty sleeping. (*Id.*) Dr. Williams advised Plaintiff to avoid lifting over ten pounds, twisting, and repetitive overhead reaching, but to walk without restriction. (R. 330.) In January and February 2010, Plaintiff attended eight physical therapy sessions experiencing mixed results. (R. 413–427.)

On February 25, 2010, Plaintiff saw Dr. Williams to discuss her continued back pain. (R. 318.) Plaintiff described the dull pain as "a 5 out of 10 on the pain scale" that occurs all the time and is equal on both sides. (*Id.*) Plaintiff also reported that rest improves her back pain and activity exacerbates it. (*Id.*) A lumbar MRI taken on February 23, 2010, revealed L4-5

degenerative disc disease with right sided disc bulge and L5-S1 severe degenerative disc disease with foraminal stenosis. (R. 319–320.)

On March 17, 2010, Ms. Castillo saw Dr. Kulkarni, a back surgeon, on the recommendation of Dr. Williams. (R. 312.) During this visit, Plaintiff again reported her pain was about a 5/10 in intensity and predominantly shoots down the right leg. (*Id*.) She had 2/4 reflexes and pain with straight leg raising on the right side only. (R. at 363.) Dr. Kulkarni administered a right L5-S1 lumbar transforaminal epidural injection to relieve Plaintiff's pain. (R. 313, 315.)

On March 31, 2010, Plaintiff was seen by Dr. LaSalle, an orthopedist, for pain and tingling emanating from her right shoulder down her right arm to her fingers. (R. 366.) During this appointment Dr. LaSalle noted that Plaintiff had full range of motion and normal strength, but could possibly have carpal tunnel syndrome. (R. 367.) Plaintiff returned to Dr. LaSalle on May 18, 2010, due to continued arm pain. (R. at 376.) Dr. LaSalle determined Plaintiff potentially suffered tendonitis of the right shoulder with carpal tunnel syndrome. (*Id*.) She was directed to attend physical therapy on May 20, 2010. (R. 381.) At physical therapy, Plaintiff experienced positive results including increased overall range of motion and decreased pain in her shoulder. (*Id.*)

On June 22, 2010, at an appointment with her physical therapist, Plaintiff stated that her pain levels had significantly improved, she had no shoulder pain, and only occasional tingling in her hand. (R. 395.) At a follow-up appointment later in June Plaintiff was instructed to undertake activities as tolerated and continue a home exercise program. (R. 400.)

On July 8, 2010, Plaintiff reported to Dr. Williams cramping in her right lower leg. (R. 401.) As a result of her complaints, on July 16, 2010, Plaintiff underwent a lumbar spinal MRI which revealed no significant changes from previous studies. (R. 404.)

**(3)** *Plaintiff's Testimony*

At the hearing, Plaintiff testified that she has numerous physical limitations due to her chronic back pain. Plaintiff employed a walker to assist her when she arrived at the ALJ hearing. (R. 31.) Plaintiff used the walker while recuperating from a fusion surgery conducted about six weeks before the hearing. (*Id*.) Plaintiff currently undertakes almost no household chores and is assisted by her mother in maintaining their home. (R. 38.) Additionally, Plaintiff testified that she was unable to drive and was unable to lift anything heavier than a gallon of milk. (R. 34, 38.) Finally, Plaintiff testified that she was unable to stand longer than thirty to forty-five minutes. (R. 35.)

**(4)** *Vocational Expert's Testimony*

Vocational Expert ("VE"), Dr. Robert Barkhaus, testified at Plaintiff's hearing before the ALJ on September 24, 2010. (R. 39.) The ALJ presented the VE with a hypothetical profile regarding Plaintiff's condition and her potential employment opportunities. (R. 40.) The ALJ's hypothetical question determined that Plaintiff in her present condition could not perform any of her past work. (*Id*.) The VE testified that there was work someone in Plaintiff's condition could undertake. (*Id*.) The VE relayed that someone with Plaintiff's residual functioning capacity could serve as an addresser in a clerical setting, a telephone clerk, or a surveillance monitor. (*Id*.) In

Plaintiff's region there are approximately 500 jobs that fall into the categories outlined by the VE. (*Id.*)

 **(5) *ALJ's Decision***

The ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 11.) The ALJ classified Plaintiff's herniated lumbar disc as a severe impairment. (R. 16.) However, Plaintiff's other impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17.)

The ALJ found that Plaintiff was not disabled and has the residual functional capacity to perform sedentary work as defined by 20 CFR 404.1567(a) and 416.967(a.) (R. 18.) However, the ALJ did note that Plaintiff can only engage in sedentary work if she can alternate between sitting and standing as needed and is only required to occasionally bend or stoop. (*Id*.)

The ALJ addressed Plaintiff's statements regarding her back pain and other ailments when making the decision. (R. 17–21.) The ALJ relied heavily upon the medical opinion and notes from Plaintiff's own physicians. (R. 18–20.) The ALJ found these opinions honest, reliable, and supported by the medical evidence in the record. (*Id*.) The ALJ did consider the fact that Plaintiff had recently undergone an additional surgery but determined that Plaintiff would return to the previously determined residual functioning capacity in twelve months. (R. 21.) Plaintiff and her counsel stipulated that there was no evidence within the record regarding her August fusion surgery. Lastly, the ALJ determined, on the basis of the VE's testimony that "the claimant is capable of making a successful adjustment to . . . work that exists in significant numbers in the national economy." (R. 22.)

Plaintiff claims the ALJ erred in denying her application for social security disability benefits and has appealed the decision. Specifically, Plaintiff argues: the ALJ failed to properly articulate her application of SSR 96-7p in assessing Plaintiff's symptoms; the ALJ erred in her assessment of Plaintiff's ability to perform a sedentary range of work; the ALJ failed to properly obtain a medical opinion to determine if Plaintiff's ailments equal one of the Listings; and the ALJ violated SSR 06-03p by disregarding a line of evidence that supported a disability determination. (DE 18, Pl. Br. at 11).

**C. Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g.)[1] The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005.) Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971.) This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005.) This Court will, however, ensure that the ALJ built

---

[1] U.S.C. § 405(g) states in relevant part:

 "Judicial review. Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) hereof which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) hereof, the court shall review only the question of conformity with such regulations and the validity of such regulations. . . The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.

an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002.)

**D. Disability Standard**

To qualify for Disability Insurance Benefits or Supplemental Security Income a claimant must establish that he or she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A.) The Social Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 CFR. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart,* 357 F.3d 697, 699–700 (7th Cir. 2004.)

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001.) A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. (*Id.*) The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000.)

**E. Analysis**

Plaintiff claims the ALJ erred in denying her application for social security disability benefits and has appealed the decision. Plaintiff argues that the ALJ erred on four separate issues in her decision. These alleged errors include: violating SSR 96-7p; improperly concluding Plaintiff could perform a sedentary level of work; failing to obtain a sufficient medical opinion in determining if Plaintiff's ailment equal a Listing; and ignoring a line of evidence supporting disability. (DE 18, Pl. Br. at 11). The Defendant

**(1)** *The ALJ properly articulated her application of SSR 96-7p in assessing Plaintiff*

An ALJ's credibility finding is entitled to "considerable deference" and will only be overturned if patently wrong. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). "This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does." *Sims v. Barnhart*, 442 F.3d 536, 537–38 (7th Cir. 2006). The ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations and must justify the credibility finding with specific reasons supported by the record. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); 20 C.F.R. § 404.1529(c) (2010); *see also* SSR 96-7p, 1996 SSR LEXIS 4. An ALJ may find that an individual's statements are "credible to a certain degree." SSR 96-7p, 1996 SSR LEXIS 4.

In the present case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 18.) However, the ALJ found that Plaintiff's statements regarding the "intensity, persistence, and limiting effects" were not

credible because they are inconsistent with the residual functional capacity determined by state agency physicians. (*Id*.)

The ALJ's credibility determinations were not patently wrong. The ALJ explained the credibility decision in a rational and logical manner and it was supported by substantial evidence of record. *Id*. at 505. The ALJ made numerous findings taking into account both the Plaintiff's testimony and the medical evidence regarding Plaintiff's ability to perform a sedentary level of work. Also, the ALJ noted, solely on the basis of Plaintiff's testimony, that Plaintiff had undergone fusion surgery shortly before the hearing and could not currently perform at the residual functional capacity previously determined by the state agency physicians. However, the ALJ emphasized that there was no evidence in the record or reason to believe that Plaintiff would not successfully recuperate from this surgery and return to the previously established residual functional capacity. Supporting this finding by the ALJ are numerous treatment notes from various physicians stating that Plaintiff traditionally responds well to physical therapy. Therefore, it was rational and logical for the ALJ to find that Plaintiff's impairments were severe but not to the extent that Plaintiff could not perform sedentary work where she was allowed to alternate standing and sitting. *See, e.g., Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004.) (finding "an ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is patently wrong.")

Since the ALJ relied on substantial evidence of record to make his credibility determinations, and they were not patently wrong, Plaintiff's argument that the ALJ violated SSR 96-7p fails.

**(2)** *The ALJ properly concluded that Plaintiff is able to perform a sedentary level of work*

Plaintiff contends that the ALJ erred in finding that her residual functional capacity (RFC) allowed her to perform sedentary work so long as Plaintiff can alternate between sitting and standing as needed. Since Plaintiff's previous work experience was not sedentary, the burden shifts to the ALJ and Defendant to show that the claimant can perform some other job. *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993).

The regulations define sedentary work as requiring sitting, some walking and standing, and minimal lifting. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a). Claimants can perform sedentary work if they can (1) sit up for approximately six hours of an eight-hour workday, (2) do occasional lifting of objects up to ten pounds, and (3) occasionally walk or stand for no more than about two hours of an eight-hour workday. *See Edwards*, 985 F.2d at 339; Social Security Ruling 83-10.

In this case, the ALJ relied on both medical and non-medical evidence in assessing Plaintiff's residual functional capacity to do sedentary work. The ALJ's finding is supported by substantial evidence including: reports from Plaintiff's treating physicians, Dr. Williams and Dr. LaSalle; Plaintiff's positive response to physical therapy and treatment, and Plaintiff's own statements regarding her ability to perform basic work-related activities such as bending, lifting, sitting, and standing. The ALJ deliberated with a sufficient amount of information and justifiably served as the final arbiter of all facts for the Commissioner of Social Security. 20 C.F.R. § 404.1527(e)(2.)

The ALJ's decision fairly analyzed the state agency physicians report on Plaintiff's residual functioning capacity, as well as reports from Plaintiff's own physicians. Dr. Williams,

who treated Plaintiff for her back and leg complaints, limited Plaintiff to lifting no more than ten pounds; avoiding repetitive bending, twisting, and overhead reaching; and walking with no limitation after her first surgery (R. 330.) When Dr. Williams saw Plaintiff in 2010, he adjusted her limitations and found she could perform normal daily activities as pain would allow. At this appointment, Plaintiff reported only minor discomfort as a result of her back pain, which consisted of "cramping" in her buttocks. (R. 369–70, 401, 405.) Dr. LaSalle, who treated Plaintiff for shoulder, arm, and wrist pain and numbness, reported significant improvement of her symptoms, solid strength, and normal range of motion in her right arm. (R. 380-86, 389-400.)

A critical element of the ALJ's decision, which exhibits careful thought and consideration of the evidence, was the discussion of Plaintiff's most recent fusion surgery. The ALJ stipulated that Plaintiff was currently unable to perform sedentary work, as prescribed by the residual functional capacity because of this surgery. The ALJ further determined that Plaintiff would most likely recover from this surgery and be able to resume sedentary work in the future. The ALJ's findings demonstrate that Plaintiff's subjective complaints about her condition were considered but were not sufficient to change the ruling.

The ALJ considered relevant evidence and reasonably concluded that Plaintiff within the next twelve months would be able to resume sedentary work. Accordingly, the Court must affirm the ALJ's decision regarding Plaintiff's ability to perform a sedentary level of work.

**(3)** *The ALJ obtained a sufficient medical opinion in determining if Plaintiff's condition equaled a Listing*

Plaintiff claims that the ALJ erred in not finding her back impairment a disability under section three of the five-step test. Plaintiff does not articulate what listing her condition equals only that the ALJ erred for not seeking out an expert medical opinion during the hearing.

This argument is successfully rebutted by the reports of two state agency physicians and the written records of Plaintiff's own treating physicians. The state agency physicians filled out Disability Determination and Transmittal forms and determined that Plaintiff had postural limitations but retained the capacity for full-time work. (R. 265–272.) These forms help establish that "consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989.) The ALJ may properly rely upon the opinion of these medical experts. *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990.) So, substantial evidence supports a finding that Plaintiff did not meet or equal a listing. *See also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004.)

**(4)** *The ALJ did not violate SSR 06-03p*

Finally, Plaintiff contends that the ALJ ignored evidence that supported Plaintiff's claim for disability, thus violating Social Security Rule 06-03p.[2] Specifically, Plaintiff argues that the ALJ should have considered that Plaintiff received Indiana Medicaid benefits. Indiana Code

---

[2] SSR 06-03p states, in relevant part:

"[a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency [e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that you are disabled or blind is not binding on us.

Under sections 221 and 1633 of the Act, only a State agency or the Commissioner can make a determination based on Social Security law that you are blind or disabled. Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (*see also* SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner".) *However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5).) Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.*"

SSR 06-03p, 2006 SSR LEXIS 5 (emphasis added.)

states that Medicaid benefits are awarded when residents will not be able to support themselves for a period of the next twelve months. Ind. Code § 12-15-2 (2012). However, Medicaid eligibility in Indiana is not solely based upon a state agency determining that a resident is disabled. Indiana Medicaid eligibility is also a function of a resident's combined household income, personal assets, age, and family composition. *Indiana Medicaid for Members*, http://member.indianamedicaid.com/ (last visited Aug. 23, 2012). Plaintiff does not point to any evidence in the record that Medicaid benefits were provided on the basis of disability determined by a medical professional.

The ALJ has discretion on the weight to give evidence and this Court will not substitute its judgment for that of the ALJ on the questions credibility and weight given to evidence. *See Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997.) The ALJ built an "accurate and logical bridge from the evidence to her conclusion" and there exists substantial evidence on the record as articulated in the ALJ's decision to support her conclusions. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)

**F. Conclusion**

The Court finds the ALJ decided Plaintiff's claim using the correct legal standard and the decision was supported by substantial evidence. Therefore, the ALJ's decision is affirmed.

SO ORDERED on September 12, 2012.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE